FILED
2020 Oct-20  PM 01:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **THE WOOLWORTH LLC    d/b/a THE WOOLWORTH,** | ) |
| | ) |
| **Plaintiff,** | ) **CASE NO: 2:20-cv-01084-CLM** |
| | ) |
| **v.** | ) |
| | ) |
| **THE CINCINNATI INSURANCE COMPANY,** | ) **JURY TRIAL DEMANDED** |
| | ) |
| **Defendant.** | ) |

## FIRST AMENDED COMPLAINT

Plaintiff The Woolworth LLC d/b/a The Woolworth brings this action against Defendant The Cincinnati Insurance Company and alleges based upon investigation, experience, information and belief as follows:

### INTRODUCTION

1.     Plaintiff has operated The Woolworth since 2017.  The Woolworth is an entertainment venue, restaurant, and bar in Birmingham, Alabama, that offers libations, food, and recreations like foosball, tabletop shuffleboard, basketball, air hockey, and duckpin bowling.  The Woolworth also offers private events.

2.     To protect its business in the event that it suddenly had to suspend operations for reasons outside of its control, or in order to prevent further property damage, Plaintiff purchased insurance coverage from Defendant, including specialty property coverage, as set forth in Defendant's Business Income (and Extra Expense)

1

Coverage Form (Form FA 213 05 16) (attached hereto as Exhibit 1).

3.      Plaintiff's insurance policy through Defendant is an "all-risk" policy that provides coverage for all non-excluded business losses.

4.      Plaintiff's policy through Defendant provides "Business Income" coverage, which promises to pay for loss due to the necessary suspension of operations following loss to property.

5.      Plaintiff's policy through Defendant also provides "Civil Authority" coverage, which promises to pay for loss caused by the action of a civil authority that prohibits access to the insured premises.

6.      Plaintiff's policy through Defendant also provides "Extra Expense" coverage, which promises to pay the expense incurred to minimize the suspension of business and to continue operations.

7.      Unlike many policies that provide Business Income coverage (also referred to as "business interruption" coverage), the policy issued by Defendant does not include, and is not subject to, any exclusion for losses caused by the spread of viruses or communicable diseases.

8.      On March 16, 2020, Plaintiff was forced to suspend or reduce business operations at The Woolworth due to COVID-19 (a.k.a. "coronavirus" or "SARS-CoV-2") and the resultant Civil Authority Orders issued by civil authorities in Alabama.

9.     Plaintiff made a claim with Defendant under its policy for business interruption coverage, including business income losses and extra expenses incurred.

## PARTIES

10.     Plaintiff The Woolworth LLC d/b/a The Woolworth is a limited liability company organized and existing under the laws of Alabama, which is located in Birmingham, Jefferson County, Alabama.

11.     Defendant The Cincinnati Insurance Company is a corporation organized and existing under the laws of Ohio, which has its statutory headquarters at 6200 South Gilmore Road, Fairfield, OH 45014-5141.

## JURISDICTION AND VENUE

12.     This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), which provides federal courts original jurisdiction over any civil action in which the parties are citizens of different states and where the matter in controversy exceeds in the aggregate the sum of $75,000, exclusive of interest and costs.  There is complete diversity of citizenship between Plaintiff and Defendant because Plaintiff is an Alabama limited liability company with its members located in Alabama while Defendant is an Ohio corporation with its principal place of business in Ohio.

13.     This Court has personal jurisdiction over Defendant because it has

purposefully availed itself of the privilege of conducting activities in the forum by soliciting, transacting, and conducting its insurance business within the State of Alabama, including issuing insurance policies (including the Policy at issue) and administering claims within the State. As such, Defendant has maintained systematic and continuous business contacts within the State of Alabama, by and through their agents and/or sale representatives.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant is a corporation that has substantial, systematic, and continuous contacts in the State of Alabama and, as a result, is subject to personal jurisdiction in this District.

15.     The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

## FACTS

### A.   Insurance Coverage

16.     Defendant entered into a contract of insurance with the Plaintiff, whereby Plaintiff agreed to make payments to Defendant in exchange for the Defendant's promise to indemnify the Plaintiff for losses, including, but not limited to, business income losses at Plaintiff's location at 1006 20th Street South,

Birmingham, Alabama 35205-2606 (the "Covered Property"), which is leased, managed, and controlled by the Plaintiff.

17.    The Covered Property is covered under Policy number EPP 050 19 39, issued by Defendant (hereinafter the "Policy").  *See* Exhibit 1.

18.    The Policy provides (among other things) property, business personal property, business income and extra expense, civil authority order, and additional coverages.

19.    Plaintiff faithfully paid policy premiums to Defendant specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of civil authority.

20.    The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the Policy means direct physical loss or direct physical damage unless the loss is specifically and expressly excluded or limited in the Policy. Defendant agreed to "pay for direct 'loss' to Covered Property . . . caused by or resulting from any Covered Cause of Loss."  The policy defines Covered Cause of Loss as direct physical loss or damage "unless the 'loss' is excluded or limited" by the Policy.

21.    The Policy does not define "direct physical loss" or "direct physical damage."

22.    In the Policy, Defendant did not exclude or limit coverage for losses

from the potential spread of viruses or communicable diseases.

23.    In the Business Income (and Extra Expense) Coverage Form (Form FA 213 05 16) of the Policy, Defendant agreed to pay for Plaintiff's actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage. A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Defendant agreed to pay for loss of Business Income during the "period of restoration" that begins after twenty-four hours have passed from the time of direct physical loss or damage.

24.    "Business Income" means net income (or loss) before tax that Plaintiff would have earned if no physical loss or damage had occurred as well as continuing normal operating expenses incurred.

25.    In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

26.    "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

27.    In the Business Income (and Extra Expense) Coverage Form of the Policy, Defendant also agreed to "pay for the actual loss of 'Business Income'" that

Plaintiff sustains "and any Extra Expense . . . caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property near the Covered Property, the civil authority prohibits access to property immediately surrounding the damaged property, the Covered Property is within the prohibited area, and the civil authority action is taken "in response to dangerous physical conditions."

28.    Losses caused by the COVID-19 pandemic and the related Civil Authority Orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, and Civil Authority provisions of the Policy.

### B.    The Coronavirus Pandemic

29.    On March 11, 2020, the World Health Organization declared that COVID-19 constituted a global pandemic.

30.    On March 13, 2020, the Governor for the State of Alabama declared the COVID-19 pandemic a public health state of emergency.

31.    The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. It is clear that the presence of COVID-19 at the Covered Property would be a direct physical loss requiring remediation to clean the surfaces of the Covered Property.

32.    The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on

cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

33.     The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

34.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, *i.e.* "fomites," for up to twenty-eight (28) days.

35.     China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

       **C.**   **The Covered Cause of Loss**

             **1.**  **Physical Loss**

36.     Losses due to the COVID-19 virus pandemic are a Covered Cause of Loss that is not excluded under the Policy.

37.      The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others,

the insurance industry drafting arm, Insurance Services Office ("ISO"), circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage.

38.     The COVID-19 pandemic caused direct physical loss of or damage to the Covered Property under the Policy by denying use of, impairing the function of, and damaging the Covered Property as well as by causing a necessary suspension of operations during a period of restoration.

39.     Further, the COVID-19 pandemic renders the Covered Property unsafe, uninhabitable, or otherwise unfit for its intended use, which constitutes direct physical loss.

40.     Additionally, Plaintiff's loss of functionality of the Covered Property constitutes direct physical loss.

## 2. Civil Authority Orders

41.     The threat and presence of COVID-19 with respect to other property has caused civil authorities throughout the country to issue orders requiring the

suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Civil Authority Orders").

42.     On March 16, 2020, the Jefferson County Health Officer issued a civil authority order (attached hereto as Exhibit 2) suspending all gatherings of twenty-five or more persons and gatherings of any size where a six-foot distance between persons could not be maintained.   The Order also prohibited on-premises consumption of food or drink at all restaurants and bars for one week, effective March 17, 2020.

43.     On March 19, 2020, the Jefferson County Health Officer issued a civil authority order (attached hereto as Exhibit 3) implementing more stringent measures, requiring the closure of all nonessential businesses and services, which included entertainment venues such as Plaintiff, and prohibiting all non-work related gathering of 10 or more persons and gatherings of any size where a six-foot distance between persons could not be maintained.  The Order reiterated the prohibition of on-premises consumption of food or drink at all restaurants and bars until April 6, 2020.  This order has been in effect since March 20, 2020.

44.     On March 19, 2020, the Alabama State Health Officer issued a civil authority order (attached hereto as Exhibit 4) suspending all gatherings, events, or activities of twenty-five or more persons and gatherings of any size where a six-foot distance between persons could not be maintained.  The Order also prohibited on-

premises consumption of food or drink at all restaurants and bars, effective March 19, 2020.  The Order recognizes that "COVID-19 in the State poses the potential of widespread exposure to an infectious agent that poses significant risk of substantial harm to a large number of people."

45.    On March 20, 2020, the Alabama State Health Officer issued another civil authority order (attached hereto as Exhibit 5) amending the March 19, 2020, Order to implement more stringent measures, prohibiting all non-work-related gatherings of twenty-five persons or more, or non-work related gatherings of any size where a six-foot distance between persons could not be maintained. The Order reiterated the prohibition of on-premises consumption of food or drink at all restaurants and bars.

46.    On March 22, 2020, the Jefferson County Health Officer issued a civil authority order (attached hereto as Exhibit 6) amending the March 19, 2020, Order to implement more stringent measures. The Order reiterated the closure of all nonessential businesses and services, which included entertainment venues such as Plaintiff, and prohibiting all non-work related gathering of 10 or more persons.  The Order reiterated the prohibition of on-premises consumption of food or drink at all restaurants and bars until April 6, 2020.

47.    On March 27, 2020, the Alabama State Health Officer issued a civil authority order (attached hereto as Exhibit 7) requiring the closure of all nonessential

11

businesses and services, which included entertainment venues such as Plaintiff, and prohibiting all non-work related gathering of 10 or more persons.  The Order reiterated the prohibition of on-premises consumption of food or drink at all restaurants and bars.  This order has been in effect since March 28, 2020.  The Order recognizes that "COVID-19 in the State poses the potential of widespread exposure to an infectious agent that poses significant risk of substantial harm to a large number of people."

48.    On April 3, 2020, the Alabama State Health Officer issued a civil authority Stay-at-Home order (attached hereto as Exhibit 8) requiring Alabama residents to "stay at his or her place of residence except as necessary to perform . . . 'essential activities.'"   The Order reiterated the prohibition of on-premises consumption of food or drink at all restaurants and bars.

49.    On April 28, 2020, the Alabama State Health Officer issued a civil authority Safer-at-Home order (attached hereto as Exhibit 9) continuing to prohibit entertainment venues, including Plaintiff, from re-opening for business.  The Order reiterated the prohibition of on-premises consumption of food or drink at all restaurants and bars.

50.    On May 8, 2020, the Alabama State Health Officer issued a civil authority Safer-at-Home order (attached hereto as Exhibit 10) continuing to prohibit entertainment venues, including Plaintiff, from re-opening for business.

51.    On May 22, 2020, the Jefferson County Health Officer issued a civil authority Safer-at-Home order (attached hereto as Exhibit 11) continuing to prohibit entertainment venues, including Plaintiff, from re-opening for business until midnight June 6, 2020, and prohibiting all non-work-related gatherings of any size, including drive-in gatherings, that cannot maintain a consistent six-foot distance between persons from different households.

52.    These Civil Authority Orders and proclamations, as they relate to the closure of all "non-essential businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming infected with COVID-19.

53.    The Civil Authority Orders were issued in response to the rapid spread of COVID-19 throughout Alabama.

54.     The Civil Authority Orders prohibited access to Plaintiff's Covered Property and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss under the Policy, *i.e.* the COVID-19 pandemic.

**D.    Impact on Plaintiff**

55.    On March 17, 2020, as a result of the COVID-19 pandemic and the

Civil Authority Orders referenced herein, Plaintiff was forced to suspend on-premises food or drink consumption at its restaurant and bar as well as to cancel private events.

56.    On March 20, 2020, as a result of the COVID-19 pandemic and the Civil Authority Orders referenced herein, Plaintiff was prohibited from operating as an entertainment venue and was forced to cease all operations.

57.    Indeed, the March 19th Civil Authority Order issued by the Jefferson County Health Officer (attached hereto as Exhibit 3) required entertainment venues—including Plaintiff—to suspend operations.

58.    The March 19th order and other Civil Authority Orders prohibited access to the Covered Property by requiring Plaintiff to completely cease its business operations and by prohibiting Plaintiff from using the Covered Property to operate its business.

59.    The issuance of the Civil Authority Orders by Alabama officials recognizes that COVID-19 is physically present throughout Alabama, which rendered businesses and properties, including Plaintiff's, unsafe or unusable.

60.    COVID-19 was physically present on property surfaces throughout Alabama, including Jefferson County, where Plaintiff operates its business.

61.    Moreover, the COVID-19 pandemic and the resultant Civil Authority Orders caused numerous businesses' properties throughout Jefferson County,

Alabama (including the area surrounding Plaintiff's business) to lose their intended functionalities and rendered these properties unsafe, uninhabitable, or unfit for occupancy.  Due to the COVID-19 pandemic and the resultant Civil Authority Orders, the physical spaces of these other properties were unable to function in the manners in which they had functioned prior to the COVID-19 pandemic.

62.    Additionally, the threat and presence of COVID-19 caused direct physical loss of or damage to the Covered Property, which in turn caused Plaintiff to suspend operations at the Covered Property.

63.    The threat and presence of COVID-19 has deprived Plaintiff of its property.

64.    Further, the threat and presence of COVID-19 at other properties caused direct physical loss of or damage to property other than Plaintiff's.

65.    Because people—staff, customers, community members, and others— frequent all areas of Plaintiff's property, there is an ever-present risk that COVID-19 is present at Covered Property and would continue to be present if the business remained open to the public.

66.    Also, because the business is conducted in an enclosed building, the Covered Property is more susceptible to being or becoming exposed to COVID-19, as respiratory droplets are more likely to be retained on the Covered Property and fomites within, and remain viable for far longer as compared to other facilities with

open-air ventilation.

67.     Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the activities of the customers and the employees require them to interact in close proximity to the property and to one another.

68.     If Plaintiff's business were to have remained open to the public, the Covered Property would be perpetually exposed to COVID-19.

69.     Because the COVID-19 pandemic created serious safety concerns for the property, employees, and customers, Plaintiff could not operate the Covered Property according to its intended function (an entertainment venue opened to the public).   In other words, the pandemic prevented the Covered Property from performing its function as an entertainment venue safe for the public. To do anything else other than close its doors would have led to the emergence or reemergence of COVID-19.

70.     The COVID-19 pandemic and resultant Civil Authority Orders diminished the value of Plaintiff's Covered Property and the usefulness of the property.

71.     The loss Plaintiff suffered is "direct" under the plain meaning of the word.   Plaintiff directly and immediately lost the functionality of its property for business purposes due to COVID-19.

72.     The loss Plaintiff suffered is "physical" under the plain meaning of the word.   The physical space of the Covered Property is unable to function in the manner in which it had functioned prior to the COVID-19 pandemic. The COVID-19 pandemic and Plaintiff's loss of functionality and of business income are material, substantive, and objectively existent.  Further, COVID-19 is a virus that is transmittable in aerosols and on physical surfaces.

73.     As such, Plaintiff's actual and immediate loss of functionality of its Covered Property and loss of business income due to the COVID-19 pandemic rendering the Covered Property unsafe, uninhabitable, or unfit for its intended use constitutes "direct physical loss" under the plain meaning of those words and a Covered Cause of Loss under the Policy.  This direct physical loss or damage caused Plaintiff to suspend operations at the Covered Property.

74.     The virus is physically impacting the Covered Property. Any effort by the Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

75.     The COVID-19 pandemic and resultant Civil Authority Order rendered the Covered Property unusable and diminished its value.

76.     As a result of the COVID-19 pandemic and the Civil Authority Orders, Plaintiff suffered direct physical loss resulting in lost Business Income and incurred

Extra Expense.  The covered losses incurred by Plaintiff and owed under the Policy are increasing daily.

77.    On or about March 18, 2020, Plaintiff submitted a claim for loss with claim number 3521482 to Defendant under its Policy due to the COVID-19 pandemic and the Civil Authority Orders.

78.    On April 20, 2020, Defendant denied Plaintiff's claim number 3521482 under the Policy stating that the presence of COVID-19 does not constitute direct physical loss (attached hereto as Exhibit 12). Further, Defendant stated that the prerequisites for civil authority coverage were not met because there was no evidence that the Civil Authority Orders were due to direct physical loss to other locations or to dangerous physical locations and because the Civil Authority Orders did not restrict access to the Plaintiff's premises.

79.    A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response is necessary. As a result of the COVID-19 pandemic and the Civil Authority Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## CAUSES OF ACTION
## COUNT I
## DECLARATORY JUDGEMENT

80.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-79 as if fully set forth herein.

81.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

82.     An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy to reimburse Plaintiff for the business interruption losses incurred by Plaintiff in connection with suspension of their business due to COVID-19 and the civil authority orders in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

    a. The Civil Authority Orders constitute a prohibition of access to Plaintiff's Covered Property;

    b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

   c. The Civil Authority Orders trigger coverage;

   d. The Policy provides coverage to Plaintiff for any current and future closures in Jefferson County due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

   e. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Covered Property; and

   f. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

83.    Plaintiff seeks a Declaratory Judgment to determine whether the Civil Authority Orders constitute a prohibition of access to Plaintiff's Covered Property.

84.    Plaintiff further seeks a Declaratory Judgment to affirm that the Civil Authority Orders trigger coverage under the Policy.

85.    Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiffs for any current and future closures of businesses such as Plaintiff's in Jefferson County due to physical loss or damage from the Coronavirus and that the Policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Covered Property.

86.     Plaintiff does not seek any determination of the amount of damages or any other remedy other than declaratory relief.

## COUNT II
### Breach of Contract
### *Business Income Coverage*

87.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-79 as if fully set forth herein.

88.     The Policy is a valid and enforceable contract between Defendant and Plaintiff.

89.     Plaintiff's Policy is a contract under which Plaintiff paid premiums in exchange for Defendant's promise to pay Plaintiff for losses for claims covered by the Policy.

90.     In the Business Income (and Extra Expense) Coverage Form of the Policy, Defendant agreed to pay for Plaintiff's actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage.

91.     A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Defendant agreed to pay for loss of Business Income during the "period of restoration" that begins after twenty-four hours have passed from the time of direct physical loss or damage.

92.     "Business Income" means net income (or loss) before tax that Plaintiff

would have earned if no physical loss or damage had occurred as well as continuing normal operating expenses incurred.

93.     The COVID-19 pandemic—which rendered the Covered Property unsafe, uninhabitable, or otherwise unfit for its intended use—caused direct physical loss and damage to Plaintiff requiring the suspension of operations at the Covered Property. Losses caused by the COVID-19 pandemic thus triggered the Business Income provision of Plaintiff's Policy.

94.     Plaintiff have complied with all applicable provisions of their policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant materially breached its insurance coverage obligations pursuant to the Policy.

95.     By denying coverage for any Business Income losses incurred by Plaintiff in connection with the COVID-19 pandemic, Defendant has materially breached its coverage obligations under the Policy.

96.     As a direct and proximate result of Defendant's breach of the Policy, Plaintiff sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## COUNT III
### Breach of Contract
### *Extra Expense Coverage*

97.     Plaintiff re-alleges and incorporates by reference Paragraphs 1-79 as if fully set forth herein.

98.     The Policy is a valid and enforceable contract between Defendant and Plaintiff.

99.     Plaintiff's Policy is a contract under which Plaintiff paid premiums in exchange for Defendant's promise to pay Plaintiff for losses for claims covered by the Policy.

100.    In the Business Income (and Extra Expense) Coverage Form of the Policy, Defendant also agreed to pay necessary Extra Expense that Plaintiff incurs during the "period of restoration" that Plaintiff would not have incurred if there had been no direct physical loss or damage to the Covered Property.

101.    "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

102.    The COVID-19 pandemic—which rendered the Covered Property unsafe, uninhabitable, or otherwise unfit for its intended use—caused direct physical loss and damage to Plaintiff requiring the suspension of operations at the Covered Property. Losses caused by the COVID-19 pandemic thus triggered the Extra Expense provision of Plaintiff's Policy.

23

103.   Due to the COVID-19 pandemic and Civil Authority Orders, Plaintiff incurred Extra Expense at the Covered Property.

104.   Plaintiff have complied with all applicable provisions of their policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant materially breached its insurance coverage obligations pursuant to the Policy.

105.   By denying coverage for any Extra Expense incurred by Plaintiff in connection with the COVID-19 pandemic, Defendant has materially breached its coverage obligations under the Policy.

106.   As a direct and proximate result of Defendant's breach of the Policy, Plaintiff sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## COUNT IV
### Breach of Contract
### *Civil Authority Order Coverage*

107.   Plaintiff re-alleges and incorporates by reference Paragraphs 1-79 as if fully set forth herein.

108.   The Policy is a valid and enforceable contract between Defendant and Plaintiff.

109.   Plaintiff's Policy is a contract under which Plaintiff paid premiums in exchange for Defendant's promise to pay Plaintiff for losses for claims covered by

the Policy.

110.   In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to "pay for the actual loss of 'Business Income'" that Plaintiff sustains "and any Extra Expense . . . caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property near the Covered Property, the civil authority prohibits access to property immediately surrounding the damaged property, the Covered Property is within the prohibited area, and the civil authority action is taken "in response to dangerous physical conditions."

111.   The Civil Authority Orders issued in response to the COVID-19 pandemic triggered the Civil Authority provision of Plaintiff's Policy.

112.   The Civil Authority Orders were a result of the COVID-19 pandemic, which is a dangerous physical condition resulting from a Covered Cause of Loss.

113.   The Civil Authority Orders prohibited access to the Covered Property.

114.   Plaintiff have complied with all applicable provisions of their policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant materially breached its insurance coverage obligations pursuant to the Policy.

115.   By denying coverage for any Business Income losses incurred by Plaintiff in connection with the Civil Authority Orders and the COVID-19

pandemic, Defendant has materially breached its coverage obligations under the Policy.

116.   As a direct and proximate result of Defendant's breach of the Policy, Plaintiff sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## PRAYER FOR RELIEF

Plaintiff respectfully requests, by reason of each of the causes set forth above, an order providing as follows:

a) For a declaration that the Orders constitute a prohibition of access to Plaintiff's Covered Property;

b) For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy;

c) For a declaration that the Orders trigger coverage under the Policy;

d) For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued closures of non-essential businesses due to physical loss or damage directly or indirectly from the COVID-19 pandemic;

e) For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Covered Property or the immediate area of the Plaintiff's

Covered Property; and

f)  Entering judgment on Counts II-IV in favor of Plaintiff, and awarding damages for breach of contract in an amount to be determined at trial;

g)  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

h)  Ordering Defendant to pay attorneys' fees and costs of suit; and

i)  For such other relief as the Court may deem proper.

Dated: October 20, 2020

*/s/ W. Daniel "Dee" Miles, III*
W. Daniel "Dee" Miles, III (AL Bar: 7656M75W)
Rachel N. Boyd (IL Bar ID: 6320342)
Paul W. Evans (AL Bar: 9270Z18F)
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
218 Commerce Street
Montgomery, AL  36104
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
dee.miles@beasleyallen.com
rachel.boyd@beasleyallen.com
paul.evans@beasleyallen.com

Richard M. Golomb, Esq. (PA Bar No: 42845)
Kenneth J. Grunfeld, Esq. (PA Bar No: 84121)
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Laurence Berman, Esq. (Pa. Bar No. 26965)
Daniel Levin, Esq. (Pa. Bar No. 80013)

27

**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
lberman@lfsblaw.com
dlevin@lfsblaw.com

***Counsel for Plaintiff***

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 20th day of October, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Augusta S. Dowd
Craig A. Shirley
W. Chambers Waller, IV
**WHITE ARNOLD & DOWD P.C.**
2025 Third Avenue North, Suite 500
Birmingham, AL 35203
Telephone: (205) 323-1888
Facsimile: (205) 323-8907
adowd@whitearnolddowd.com
cshirley@whitearnolddowd.com
cwaller@whitearnolddowd.com

*/s/ W. Daniel "Dee" Miles, III*
Of Counsel