FILED
2021 Apr-15  PM 02:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **THE WOOLWORTH LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-CV-01084-CLM** |
| | ) | |
| **THE CINCINNATI** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

COVID-19 devasted many small businesses. The Woolworth LLC was one of them. The Woolworth was a restaurant bar in Birmingham that did not survive the government-mandated suspension of businesses in Jefferson County. The Cincinnati Insurance Company ("CIC") was The Woolworth's insurance carrier. CIC denied The Woolworth's claim for business income, extra expense, and civil authority coverage due to the shutdown. So The Woolworth sues CIC for breach of contract.

Their dispute boils down to this question: Was the suspension of The Woolworth's business caused by a direct physical loss or direct physical damage to The Woolworth's property? For the reasons stated within, this court joins the vast majority of other courts that have held that virus-related shutdowns do not cause physical damage or loss, so the CIC policy does not cover the resulting losses. The court thus **GRANTS** CIC's motion to dismiss The Woolworth's complaint. Doc. 22.

## STATEMENT OF FACTS

### A. The Coronavirus

Experts believe that people are the primary spreaders of COVID-19, and persons with the virus can spread the virus while close to others—even if the COVID-positive person has no symptoms. *How COVID-19 Spreads*, CENTERS FOR DISEASE CONTROL AND PREVENTION, (last updated Jan. 7, 2021) https://www.cdc.gov/coronavirus/2019-ncov/transmission/index.html. To prevent further spread of the virus, Alabama Governor Kay Ivey declared a public health emergency in March 2020. Several counties, including Jefferson County, announced stay-at-home orders in the weeks that followed. Governor Ivey issued a state-wide order suspending "non-essential" businesses. The State considered businesses that provided food, drinks, and entertainment to be non-essential. So The Woolworth closed, and it never reopened.

### B. The Policy

Whether CIC owes Woolworth business income, extra expense, and civil authority coverage boils down to whether The Woolworth suffered a "Covered Cause of Loss" under the Woolworth's Business Income (and Extra Expense) Coverage Policy. *See* Doc. 1-1 at 74-82. Several provisions of the Business Income policy govern the answer to that question.

2

Section A(1) says that CIC "will pay for the actual loss of 'Business Income' you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. The 'suspension' must be caused by direct 'loss' to property at 'premises'… The 'loss' must be caused by or result from a Covered Cause of Loss." Doc. 1-1 at 74. So the court turns to Section A(3), which gives "Covered Cause of Loss" the same definition the term is given in a different policy: "Covered Causes of Loss means direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." Doc. 1-1 at 7. No exclusion or limit applies here, so CIC owes The Woolworth if The Woolworth suffered a "direct loss." That means the court must next find the definition of "loss."

Section F(6) defines "loss" as "accidental physical loss or accidental physical damage." (Form 213 05 16, page 9). Plugging that definition into the previously discussed provisions (§§ A(1), A(3)) provides the ultimate test:

- Was the suspension of The Woolworth's business caused by an "direct physical loss" or "direct physical damage" to property?

  o If yes, then CIC must pay The Woolworth for business income lost during the "period of restoration."

  o If no, then CIC owes nothing because The Woolworth did not suffer a Covered Cause of Loss.

These questions beg one more definition: "period of restoration." Section F(8) defines the "period of restoration" as "the period of time that:

3

    a.  Begins at the time of direct 'loss'

    b.  Ends on the earlier of:

        (1) The date when the property at the 'premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (2) The date when business is resumed at a new permanent location.

Doc. 1-1 at 82. As explained later, that definition—particularly its requirement that The Woolworth either (a) repair, rebuild, or replace its property or (b) relocate the restaurant—helps define what a "physical loss" or "physical damage" is (and is not).

## STANDARDS OF REVIEW

    1.  <u>Federal pleading standards</u>: Because this is a Rule 12 motion, the court accepts the allegations in the Woolworth's complaint as true and construes them in the light most favorable to the Woolworth. *Lanfear v. Home Depot, Inc.*, 697 F.3d 1267, 1275 (11th Cir. 2012). The ultimate question is whether all of the Woolworth's allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). If the facts as pleaded could entitle the Woolworth to relief, then the court must deny Cincinnati's motion to dismiss. If, however, the court accepts all of the Woolworth's pleaded facts as true, and the Woolworth would still not be entitled to relief, then the court must grant the motion.

2.  <u>State-law contract interpretation</u>: Under Alabama law, "[g]eneral rules of contract law govern an insurance contract." *Safeway Ins. Co. of Alabama v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). Thus, "[t]he language in an insurance policy should be given the same meaning that a person of ordinary intelligence would reasonably give it." *W. World Ins. Co. v. City of Tuscumbia*, 612 So. 2d 1159, 1161 (Ala. 1992). If the terms "are reasonably certain in their meaning, they are not ambiguous as a matter of law and the rule of construction in favor of the insured does not apply." *State Farm Mut. Auto. Ins. Co. v. Brown*, 26 So. 3d 1167, 1169 (Ala. 2009) (citing *Bituminous Cas. Corp. v. Harris*, 372 So.2d 342 (Ala.Civ.App.1979)). But if the terms are ambiguous, "all ambiguities must be resolved against the insurance company." *Safeway Ins. Co. of Alabama v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). Further, "where an insurance policy defines certain words or phrases, a court must defer to the definition provided by the policy." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001). Additionally, a court "must read each phrase in the context of all other provisions." *Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So. 2d 866, 870 (Ala. 1996).

## ANALYSIS

This question controls the case: Was the suspension of The Woolworth's business caused by a "direct physical loss" or "direct physical damage" to property? Alabama courts have not answered this question. Nor have they defined the phrases "direct physical loss" or "direct physical damage" in a virus-related context.

So this court must answer the question by giving the phrases "direct physical loss" and "direct physical damage" the meaning that "a person of ordinary intelligence" would give them after reading the policy. *W. World Ins. Co.*, 612 So. 2d at 1161. Because the court is ruling on a Rule 12 motion, the court must also interpret the facts in a light most favorable to The Woolworth. That means the court assumes that the virus was physically present on The Woolworth's property during the shutdown period.

In Part I, the court explains why a plain reading of the Business Income policy limits the phrases "direct physical loss" and "direct physical damage" to perceptible, material injuries to property that must be repaired or replaced—not invisible viruses that can be wiped from the surface. In Part II, the court shows that nearly all courts that have read the same policy have defined the terms the same way and thus denied coverage related to government shutdowns.

**I.     The Woolworth fails to sufficiently allege a "direct physical loss" or "direct physical damage" to its property.**

The Woolworth correctly argues that the court must give the words "loss" and "damage" distinct meanings and that The Woolworth only needs to sufficiently allege one of them. *See Simcala, Inc. v. Am. Coal Trade, Inc.,* 821 So. 2d 197, 200 (Ala. 2001) (courts must presume "every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used").

The Woolworth alleges that it suffered a "direct physical loss." Doc. 17 ¶73. The Woolworth alleges that the "loss" it suffered was "direct" because it "directly and immediately lost the functionality of its property for business purposes due to COVID-19." *Id.* ¶ 71. It then claims the "loss" was "physical" as follows:

> The physical space of the Covered Property is unable to function in the manner in which it had functioned prior to the COVID-19 pandemic. The COVID19 pandemic and Plaintiff's loss of functionality and of business income are material, substantive, and objectively existent. Further, COVID-19 is a virus that is transmittable in aerosols and on physical surfaces.

*Id.* ¶ 72.[1] In other words, The Woolworth divorces the phrase "physical loss" and ties the word "physical" to the virus while tying the word "loss" to The Woolworth's

---

[1] The Woolworth makes the conclusory allegation that "[t]he COVID-19 pandemic—which rendered the Covered Property unsafe, uninhabitable, or otherwise unfit for its intended use—caused direct physical loss and damage to Plaintiff requiring the suspension of operations at the Covered Property." Doc. 17 ¶¶ 93, 102. But The Woolworth argues only that it suffered a physical loss. *See* Doc.   at 6-10.

ability to conduct business. This is wrong for two reasons.

First, Section A(1) requires a loss to property, not a lost ability to do business: "The 'suspension' must be caused by ***direct 'loss' to property*** at 'premises'." Doc. 1-1 at 74 (emphasis added). Alabama law holds that "purely economic losses" are not considered "tangible property" (*i.e.*, property that can be lost or damaged) in the insurance context. *Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 248 (Ala. 1995). Second, the court cannot tear the adjective "physical" from the noun it modifies, "loss." The policy says that the loss—not the cause of the loss—must be physical. And a common understanding of the words "physical" and "loss," when read in context with the policy, shows that the phrase "physical loss" describes a perceptible, material injury to property that requires repair or replacement.

### A. Plain Meaning

While The Woolworth argues that it suffered "physical loss," rather than "physical damage," it helps to define both phrases to understand the policy. "Loss" is commonly understood to mean "destruction, ruin." *Loss*, Merriam-Webster Online Dictionary (2021), available at www.merriam-webster.com/ dictionary ("Merriam-Webster"). "Damage" is commonly understood to mean "loss or harm resulting from injury to person, property, or reputation." *Damage*, Merriam-Webster, *supra*. And "physical" is commonly understood to mean "having material

existence," and "perceptible especially through the senses and subject to the laws of nature." *Physical*, Merriam-Webster, *supra*.

So a person of ordinary understanding would define "physical damage" to be a perceptible, material harm to property. The same person would define "physical loss" to be a material, perceptible destruction or ruin of property. In other words, a person of ordinary understanding would read the policy to cover a spectrum of property damage that ranges from lesser harm (*i.e.* physical damage) to total ruin (*i.e.* physical loss). And that person would understand that the property damage must be "physical"—*i.e.*, material and perceptible, not theoretical or invisible.

### B. Policy Context

The policy's "period of restoration" confirms this plain reading. The policy requires CIC to pay for business income lost only "during the period of restoration." Doc. 1-1 at 74. The period of restoration runs from "the time of the direct loss" until the day that either (a) "the property at the premises is *repaired, rebuilt or replaced with reasonable speed and similar quality*" or (b) the business resumes at a new location. *Id.* at 82 (emphasis added).

Combining this definition with our previous terms, a person of common understanding would understand the "period of restoration" to run from the moment that business property is "physically damaged" until it is "repaired" or "rebuilt." Or

for property that was "physically lost," the period runs from the moment the property was ruined until the day the property is replaced or the business reopens in another location.

### C. Application to COVID-19

While the Woolworth alleges that it was temporarily unable to function as an entertainment venue because the virus was physically present on its property, the Woolworth has not alleged that any of its property was materially harmed (*i.e.* "physical damage") or ruined (*i.e.* "physical loss") and thus needed to be repaired, rebuilt, or replaced. Nor can it. A virus does not physically alter the property it rests on. A virus does not require property to be repaired, rebuilt, or replaced. A virus can simply be wiped off the surface with disinfectant, so there is no "physical damage," no "physical loss," and no "period of restoration" of property.

The court finds two more sources of support for this conclusion. First, the definition of the "period of restoration" excludes any "increased period" of time required to comply with an "ordinance or law" that requires the insured to "test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants." Doc. 1-1 at 82. The policy defines "pollutants" to include "substances which are generally recognized in the industry or government to be harmful or toxic to persons[.]" *Id.* The Alabama state

government has recognized COVID-19 as a substance harmful to persons since at least March 13, 2020, when Governor Ivey declared the pandemic as a public health emergency. If the containment of viruses is excluded from the period of restoration, and The Woolworth did not have to repair, rebuild, or replace any property the virus touched, then there is no compensable "period of restoration" under Section A(1)(a) of the policy.

Second, a leading insurance treatise says that "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A Steven Pitt, *et al.*, Couch on Insurance § 148:46 (3rd ed. 2019). So the court's ruling is in line with industry understanding.

As shown below, the court's ruling is also in line with other courts' rulings.

## II.   Other courts agree that viruses and virus-related shutdowns do not cause "direct physical loss" or "direct physical damage" to property.

### A. Eleventh Circuit

The Eleventh Circuit has yet to address a COVID shutdown-related claim. But just last year, the Circuit Court addressed a similar situation in *Mama Jo's Inc. v.*

*Sparta Insurance Co.*, in which outdoor construction caused dust and debris to filter into the insured's restaurant, thereby decreasing the number of visitors. *Id.* at 871. The restaurant filed a claim for lost income with its insurance company, arguing the dust and debris constituted a "direct physical loss" as required by the policy. *Id.* The Eleventh Circuit concluded "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* at 879 ("Florida's District Court of Appeals for the Third District has addressed the definition of "direct physical loss": "A 'loss' is the diminution of value of something."").

While *Mama Jo's* is a Florida case, Alabamians share the same understanding of the words "direct" and "physical." If dust and debris on restaurant property is not a "direct physical loss" because the property "merely needs to be cleaned," *id.* the court suspects the Eleventh Circuit would say the same about a virus.

## B. District courts and state courts

The court ordered CIC to list every state and federal decision that has applied the same policy to a COVID shutdown-related claim. Doc. 30. CIC's list shows that 20 state and federal trial courts have dismissed or granted summary judgment on claims like The Woolworth's. *See* Doc. 31. Only five courts have denied motions to dismiss like this one. *Id.*

12

The court has reviewed these opinions and has found a clear consensus that the terms "physical loss" and "physical damage" in CIC's policy require some material change to the insured's property that requires repair or replacement. *See, e.g.*, *Bluegrass Oral Health Center, PLLC, v. Cincinnati Ins. Co.*, 2021 WL 1069038 at *10 (W.D. Ky. Mar. 18, 2021) ("[I]n context, 'physical loss' would mean destruction or ruin produced by the forces or operation of physics. . . . In this light, 'physical loss' would apply to property destroyed by some force, contrasted with 'physical damage' which would cover a lesser extent of harm short of destruction or ruin. Thus, the policy would extend to the continuum of harm from total (loss) to partial (damage) resulting in alteration to an insured property.'); *St. Julian Wine Co., Inc. v. Cincinnati Ins. Co.*, 2021 WL 1049875 at *3 (W.D. Mich. Mar. 19, 2021) ("there is no reasonable construction of 'physical loss' or 'physical damage' that encompasses the presence of a contagious virus in the general population. In ordinary usage, 'physical' means something tangible and material. Applying Michigan law, the Court of Appeals for the Sixth Circuit has interpreted the phrase 'physical loss or damage' in an insurance policy to mean 'tangible damage' to property"); *FS Food Group, LLC v. The Cincinnati Ins. Co.*, Case No. 3:20-cv-00588-RJC-DSC (W.D. N.C. Mar. 18, 2021) ("although the Policy does not define 'direct physical loss' or 'physical damage,' the Court finds that the plain and

ordinary meaning requires actual, physical damage to the covered premises")
(opinion filed as Doc. 31-4 in this record).

While none of these opinions[2] is controlling here, that nearly every court has
read the terms "physical loss" and "physical damage" the same way this court reads
them supports the court's conclusion that the policy has a plain, unambiguous
meaning—a meaning that does not cover The Woolworth's claims for business
income, extra expense, and civil authority coverage.

## CONCLUSION

The Woolworth fails to allege sufficient facts that would entitle it to a
declaratory judgment (Count 1) or relief for a breach of contract (Counts 2-4). So
the court will enter a separate order that **GRANTS** CIC's motion to dismiss The
Woolworth's amended complaint.

**DONE** this 15th day of April 2021.

_Corey L. Maze_
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

---

[2] _See_ Doc. 32-1.

14